IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **ANTONIO PRECIADO VILLALOBOS,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **PE:22-CV-00010-DC-DF** |
| | § | |
| **HUDSON INSURANCE COMPANY, and** | § | |
| **AIM TRUCKING AND OILFIELD** | § | |
| **SERVICE, LLC,** | § | |
| *Defendants*. | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Plaintiff Antonio Preciado Villalobos's ("Villalobos") Opposed Motion to Remand (hereafter, "Motion to Remand") (Doc. 6). This case is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636, and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** that Villalobos's Motion to Remand be **GRANTED**. (Doc. 6).

**I. BACKGROUND**

A.      State Court Claims

This case's genesis is a truck wreck involving Villalobos. On or about April 4, 2019, an individual named Jorge Ricardo Machado ("Machado") was driving a tractor-trailer along SH-302 in Reeves County, Texas. (Doc. 1-4 at 9). Around this time, Valentin Bautista Gonzalez ("Gonzalez") was stopped in traffic along the same roadway. (*Id.*). Machado, in his tractor-trailer, approached the stopped vehicles but failed to bring the semi-truck to a halt, striking Gonzalez's vehicle; several secondary collisions ensued. (*Id.*). Among those impacted by Machado's still-moving tractor-trailer was Villalobos, who was traveling on SH-302 from the opposite direction. (*Id.*). Villalobos's vehicle

was struck and rolled over. (*Id.*). At the time of the wreck, Machado was operating a tractor-trailer purportedly "owned, leased, and/or controlled" in part by Defendant Aim Trucking and Oilfield Service, LLC ("Aim"). (*Id.* at 9–10). Machado was also allegedly employed by Aim and acting in the course and scope of his employment. (*Id.* at 10).

On April 1, 2021, several plaintiffs ("Original Plaintiffs") filed an amended petition in state district court under Cause No. 19-04-22918-CVR, *Maria Elena Bautista et al. v. Aim Trucking & Oilfield Services, LLC, et al.*, in the 143rd Judicial District of Reeves County, Texas (hereafter, "State Court Action"). *Maria Elena Bautista v. Aim Trucking & Oilfield Services, LLC (Federal Action I)*, No. 4:21-CV-00022-DC (W.D. Tex. Apr. 14, 2021) (ECF No. 1-28). The Original Plaintiffs asserted claims for vicarious liability, negligence, negligent undertaking, and negligence *per se*. (*See id.*). Villalobos filed his live Fourth Amended Petition in Intervention (hereafter, "Intervenor Petition") on April 5, 2021. (Doc. 1-4). In it, Villalobos asserts the following claims against Aim: negligence (vicarious liability and respondeat superior), negligence (direct), negligent entrustment, negligent undertaking, various theories of gross negligence, and fraudulent inducement. (*Id.* at 14–28).

Villalobos claims that he, Aim, and the Original Plaintiffs in the State Court Action attended a mediation on September 28, 2020. (Doc. 1-4 at 10–11). At this mediation, Defendant Hudson Insurance Company's ("Hudson") was also present, as it is undisputedly "Aim's insurer" under a $5,000,000 policy (hereafter, "Insurance Policy"). (*Id.*; *see also* Docs. 6 at 3; 9 at 8; 9-1 at 6). Hudson purportedly "promised to tender its policy limits of $5,000,000 to the [Original Plaintiffs]" as well as Villalobos, among other parties. (Doc. 1-4 at 10–11). The attending parties allegedly entered into a "written Rule 11 Agreement" purporting to settle the case (hereafter, "Purported Settlement"), under which Aim and Hudson "represented that they would tender the policy limits of the Insurance Policy, $5,000,000 [], and place the funds into the [state c]ourt's registry." (*Id.*).

2

Villalobos claims the Purported Settlement induced upon him a reliance so sufficient as to halt his prosecution of some of the state court claims, and that this reliance and subsequent conduct "was reasonable in light of Hudson's promise to tender" the proceeds for future allocation. (*Id.* at 10–11). Aim and Hudson allegedly failed to make the $5,000,000 deposit, and instead, "secretly negotiated and executed a separate settlement" with the Original Plaintiffs in January 2021. (*Id.* at 11). After confronting them, Aim and Hudson purportedly "claimed that the [Purported] Settlement [] was invalid." (*Id.*). According to Villalobos, "only $550,000 of the $5,000,000" in proceeds remain to be allocated, an amount insufficient to cover Villalobos's $2,300,000 of claimed damages. (*Id.* at 12). Thus, Villalobos argues that the "material and false representations" by Aim and Hudson "cost [him] precious time and drastically reduced the settlement funds available to satisfy his claims" and "forced [him] to prosecute additional causes of action due exclusively to Aim and Hudson's nefarious conduct." (*Id.* at 12–13).

B.     Removal to Federal Court

On April 14, 2021, Hudson removed the entirety of the State Court Action to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. §§ 1441 and 1446. *Federal Action I*, No. 4:21-CV-00022-DC (W.D. Tex. Apr. 14, 2021) (ECF No. 1). Hudson maintained in *Federal Action I* that the Court possessed diversity subject matter jurisdiction based upon Hudson and Villalobos's undisputed diversity. (*Id.* at 4). In its original Notice of Removal (hereafter, "Original Notice"), Hudson anticipated a challenge to diversity jurisdiction premised upon Aim's conceded "in-state defendant" status in the State Court Action. (*Id.*). Hudson asserted that the Court held diversity jurisdiction notwithstanding Aim's undisputedly non-diverse status due to Villalobos's then-alleged improper joinder of Aim, purportedly done for the purpose of "depriv[ing] Hudson from having [] Villalobos's claims against it adjudicated in federal court." (*Id.* at 5). Hudson claimed that Aim's citizenship should be disregarded under the improper joinder doctrine because Villalobos "fail[ed] to allege any facts that [would have] establish[ed] a valid cause of action" for either fraudulent

3

inducement or declaratory judgment against Aim. (*Id.* at 5–6). Specifically, Hudson asserted that Villalobos's claims against Aim failed to establish a valid corresponding cause of action since Villalobos could not demonstrate that Aim "owe[d] any duties to [] Villalobos" with regards to Aim's purportedly false representations to Villalobos, or to Aim's ability to make payment decisions regarding the Insurance Policy. (*Id.* at 6–7). Although the State Court Action was initially instigated on April 1, 2021, by the filing of the Original Plaintiff's amended petition, far in advance of the 30-day timeline mandated by the diversity statute, Hudson insisted that Villalobos's Intervenor Petition in the State Court Action constituted an "other paper," only after which the 30-day counter began to run. *Federal Action I*, No. 4:21-CV-00022-DC (W.D. Tex. Apr. 14, 2021) (ECF Nos. 1 at 8; 28).

On April 29, 2021, several of the Original Plaintiffs in the State Court Action filed a Motion to Remand, which this Court granted on November 18, 2021. (ECF Nos. 14, 52). In its order remanding *Federal Action I* (hereafter, "Remanding Order"), the Court did not substantively address Hudson's arguments pertaining to any supposed improper joinder of Aim. (ECF No. 52). The Court instead held that because many of the Original Plaintiffs were undisputedly Texas citizens, thereby destroying diversity, *Federal Action I* could not remain in this Court. (*Id.* at 5–7). Further, the Court expressly declined to examine the "propriety of Villalobos's direct action against . . . Aim," suggesting that Hudson seek to raise the issue of impossibility of suit against Aim in state court. (*Id.* at 7).

Following remand to state court, on February 10, 2022, the presiding judge in the State Court Action ordered Villalobos's "cause of action for fraudulent inducement and claim for declaratory judgment" against Aim and Hudson be "severed into a separate and independent lawsuit from the [State Court Action]." (Doc. 1-14 at 2–3). On March 14, 2022, Hudson filed a Notice of Removal, invoking again this Court's diversity jurisdiction under 28 U.S.C. § 1446 and commencing the instant case. (Doc. 1). Hudson, as it attempted to do in *Federal Action I*, asserts complete diversity jurisdiction based on Villalobos's alleged improper joinder of Aim. (*See generally id.*).

4

Villalobos filed the instant Motion to Remand on April 13, 2022. (Doc. 6). Hudson filed its Response on April 27, 2022, followed by Villalobos's Reply on May 4, 2022. (Docs. 9, 10). Accordingly, this case is now ripe for disposition.

## II. Legal Standard

Federal courts are of limited jurisdiction, possessing "only that power authorized by [the] Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258–59 (5th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377). A defendant may remove a state-court civil action to a federal district court if the latter has original jurisdiction. *See* 28 U.S.C. § 1441(a). "A federal district court may exercise original jurisdiction over any civil action that either satisfies diversity requirements or that arises under the federal constitution, statutes, or treaties—commonly referred to as 'federal question' jurisdiction." *Energy Mgmt.*, 739 F.3d at 258–59. "Thus, under § 1441, removal is proper only when the court has original jurisdiction over at least one asserted claim under either federal question or diversity jurisdiction." *Id*. at 259. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . citizens of different States." 28 U.S.C. § 1332(a)(1).

Once the case is removed, the district court must, however, remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The removing party bears the burden of proving by preponderance of evidence that federal jurisdiction exists. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). Significantly, the jurisdictional facts must be judged as of the time of removal of the state court case to federal court. *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014).

## III. Analysis

In this case, the parties agree that Aim is a Texas citizen, thereby ordinarily precluding this Court's exercise of diversity jurisdiction over this case. (Docs. 6, 9). Therefore, the sole remaining global issue is whether Aim's citizenship should be considered in evaluating whether this Court can appropriately maintain diversity jurisdiction. This issue can be splintered into two secondary inquiries: (1) whether Hudson's subsequent removal following remand was procedurally proper, and (2) if it was, whether this Court can maintain subject matter jurisdiction over this case.

## A.     Propriety of Secondary Removal

At the outset, a secondary removal must be properly presented. Villalobos's initial line of attack lies with the purported impropriety of Hudson's post-severance removal. Villalobos does not expressly indicate which type of objection to the secondary removal he is asserting, though he does remark that Hudson is seeking "a second bite at the apple based on the same arguments that failed before." (Doc. 6 at 6). There are two categories into which removal cases typically fall: "amount disputes" and "timeliness disputes." *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 398 (5th Cir. 2013). Although neither party seems to characterize the Motion to Remand as presenting a dispute based on timeliness, context clues and an examination of the record permit the undersigned to infer such is the basis for dispute. In the Intervenor Petition, Villalobos states he is seeking monetary relief of over $1,000,000.00. (Doc. 1-4 at 4). With this, as well as the Motion to Remand lacking any notation of the amount in controversy as a ground for remanding this case, the undersigned can only conclude that Villalobos is not disputing the amount sufficient for diversity jurisdiction.

The undersigned detects but one possible ground[1] for procedural impropriety of this removal, that of untimeliness. For if Villalobos is correct, the Notice of Removal, without even considering

---

1. Of equal import is the Court's Remanding Order, which expressly "set[] aside . . . arguments regarding Villalobos's alleged improper joinder of Aim" in holding that "diversity [wa]s defeated." *Federal Action I*, No. 4:21-CV-00022-DC (W.D. Tex. Nov. 18, 2021) (ECF No. 52). It is established case law that a removal ground which has been previously adjudicated ordinarily cannot be removed for a subsequent time. *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996). In this case, the Remanding Order's language precludes the possibility that improper joinder—the only substantive ground in support of this Court's exercise of diversity jurisdiction in the

Hudson's improper joinder arguments, will have been untimely filed, and the case will have to be remanded. In other words, if the severance in the State Court Action did not provide an additional ground for remand, or if *Williams* did not authorize it as such, this case should be remanded as untimely. Even though the parties do not expressly address the timeliness of this removal, because there is apparently no other way to incorporate a discussion of *Williams*,[2] the undersigned considers the *Williams* discussion as asserting a timeliness issue. *See Dowd v. Tubemaster, Inc.*, No. 21-CV-00125-SJD-CAN, 2021 WL 4024452, at *1 n.1 (E.D. Tex. June 15, 2021) (acknowledging courts' inability to remand for procedural defects only upon motion of a party). Therefore, the undersigned will analyze the general propriety challenge to the Notice of Removal as a timeliness dispute.

### 1.     28 U.S.C. § 1446(b)(3): Other Paper Exception

A timeliness dispute "occurs when the defendant did not remove within thirty days after receipt of the initial pleadings under § 1446(b)'s first paragraph [concerning the general removal timeframe], but instead removed under the second paragraph, within thirty days of receiving some . . . other paper." *Mumfrey*, 719 F.3d at 398; *see also Napier v. Humana Marketpoint, Inc.*, 826 F.

---

instant secondary removal—was previously adjudicated in *Federal Action I. See Odar v. Felix Energy Holdings II LLC*, No. PE:21-CV-00079-DC-DF, 2022 WL 1115407, at *3 (W.D. Tex. Apr. 12, 2022), *report and recommendation adopted*, No. PE:21-CV-079-DC, 2022 WL 1514644 (W.D. Tex. May 13, 2022) ("If the factual basis in the second removal was 'not deemed adjudicated' in the prior remand order, the subsequent removal, if timely, is proper.") (citing *Winfield v. Quiktrip Corp.*, No. 3:19-CV-2652-B, 2019 WL 7037588, at *3 (N.D. Tex. Dec. 20, 2019)). Therefore, demonstrating procedural impropriety of removal in this action requires an alternative basis.

2. Hudson takes issue with Villalobos's discussion of two Fifth Circuit cases, *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), and *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007), countering with its own. (Doc. 9 at 6–10). Without going into much detail, the cases cited by Hudson are presented for the purpose of countering Villalobos's assertion that "Hudson's attacks on the fraudulent inducement claim apply equally to that claim against both Hudson and Aim." (Doc. 6 at 9). As described below, Hudson does not meet its burden of proving the improper joinder of Aim. Even if it does, all pertinent facts for the fraudulent inducement claim are alleged as against *both* Hudson and Aim. (Docs. 1-4; 10 at 2). Where Hudson's defenses may be found to differ from those of Aim, as explained in the improper joinder analysis, those defenses have not been alleged to be applicable outside the State Court Action claims for inter alia *respondeat superior* as they relate to Aim's own liability for the truck wreck and Hudson's insurance obligations for that liability. In other words, defenses such as the no direct action rule relate to liability for the truck wreck, as opposed to liability for any fraudulent inducement. That Hudson relies on the insurer-insured distinction is evident throughout Hudson's response. (*See, e.g.*, Doc. 9 at 8–9). Accordingly, the forthcoming analysis as to fraudulent inducement applies equally to both defendants, as alleged in the Intervenor Petition. Thus, *Williams* has no other conceivable relevance to this case than timeliness.

Supp. 2d 984, 986–87 (N.D. Tex. 2011) (describing the "two procedural postures"). The Fifth Circuit follows a "liberal allowance of subsequent removals." *Leininger v. Marriott Int'l Inc.*, No. SA-21-CV-01160-JKP, 2022 WL 199272, at *4 (W.D. Tex. Jan. 21, 2022). Other courts have stated the policy most explicitly, discerning that "the only effect of adopting an absolute one-bite rule would be to encourage plaintiffs to be coy." *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 783 (7th Cir. 1999) (Easterbrook, J.).

Generally, to timely remove a case, a defendant must file a notice of removal within 30 days after the receipt of the initial pleading. *Everett Fin., Inc. v. Kocher*, No. 3:19-CV-1563-B, 2019 WL 4597574, at *2 (N.D. Tex. Sept. 20, 2019) (citing 28 U.S.C. § 1446(b)(1)). The removal must nevertheless be filed within one year after commencement of the state court action. 28 U.S.C. § 1446(c)(1). In the event the state court case is initially not removable, the removal statute further provides that,

> a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or *other paper from which it may first be ascertained* that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3) (emphasis added). In effect, the originally nonremovable lawsuit becomes removable if a sufficient "other paper"[3] presents itself, from which jurisdiction "is 'unequivocally clear and certain' from the document." *Bradley v. Wal-Mart Stores*, No. 21-498-BAJ-RLB, -- F. Supp. 3d -- , 2021 WL 6751667, at *3 (M.D. La. Nov. 18, 2021) (quoting *Boskey v. Kroger Tex., LP*, 288 F.3d 208, 2011 (5th Cir. 2002)), *report and recommendation adopted*, No. 21-00498-BAJ-RLB, 2022 WL 264541 (M.D. La. Jan. 27, 2022). This "other paper" does not need to be filed in the state court proceedings to provide a defendant a path to removal under this provision. *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). Merely, once such "other paper" is received

---

3. The statute enumerates several other documents which may trigger the § 1446(b)(3) alternate countdown. For ease of reference, the enumerated items will be collectively referred to as "other paper" where applicable.

by the defendant, the 30-day removal clock commences, and "a notice of removal [can then] be filed within thirty days of the defendant's receipt." *Allen v. Bulk Logistics, Inc.*, 485 F. Supp. 3d 691, 693–94 (S.D. Miss. 2020) (citing *Mumfrey*, 719 F.3d at 397, 398). Thus, the existence of an "other paper" can allow for removal beyond the typical 30-day deadline if made within 30 days of its receipt by the defendant.

Essentially, § 1446(b) "provides a two-step test for determining whether a defendant timely removed a case." *Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 297 (5th Cir. 2017) (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992)). If the case as initially pleaded is removable, the defendant must file a notice of removal within 30 days of the receipt of the initial pleading; if not, the defendant must file a notice of removal within 30 days from the receipt of other paper "from which the defendant can ascertain that the case is removable." *Id.* If neither of these deadlines are met, relevantly, the removal is untimely.

The State Court Action, via its most recent amended petition filed before the instant removal, was initiated on April 1, 2021. *Federal Action I*, No. 4:21-CV-00022-DC (W.D. Tex. Apr. 14, 2021) (ECF No. 1-28). Hudson first removed this case, commencing *Federal Action I*, on April 14, 2021. (ECF No. 1). *Federal Action I* was then remanded on November 18, 2021. (ECF No. 52). Hudson's Notice of Removal in this case occurred on March 14, 2022, clearly well beyond the 30-day period reserved for ordinary removals, notwithstanding the *Federal Action I* removal. (Doc. 1). Therefore, the undersigned must determine whether the instant removal was nevertheless timely as "other paper."

### 2. 28 U.S.C. § 1446(b)(1): General Removal

#### i. Timeliness of General Removal

It is evident that Hudson's subsequent removal, under typical removal circumstances, would be untimely. Thus, the Court must remand the case yet again unless the other paper exception applies. Neither party's briefs in this case directly address this issue. Hudson, in its Original Notice,

did however cite as the reason for its primary removal "other paper" in reference to Villalobos's

Intervenor Petition, filed in the State Court Action. *Federal Action I*, No. 4:21-CV-00022-DC (W.D.

Tex. Apr. 14, 2021) (ECF No. 1 at 8). Here, Hudson expresses that the removal is "being filed within

30 days of the state district court's severance of [] Villalobos's fraudulent inducement/declaratory

judgment action." (Doc. 1 at 7). This is purportedly pursuant to § 1446(b)(1), which, notably, is not

the "other paper" statute, but rather the general 30-day timeline for removal. *See* 28 U.S.C. §

1446(b)(1).

> Under § 1446(b)(1),
>
> The notice of removal of a civil action or proceeding *shall be filed within 30 days after the receipt by the defendant*, through service or otherwise, *of a copy of the initial pleading* setting forth the claim for relief upon which such action or proceeding is based, or within *30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant*, whichever period is shorter.

28 U.S.C. § 1446(b)(1) (emphasis added). Section 1446(b)(3) need only be relied on if the time to

remove under § 1446(b)(1) has already passed. *See In re Johnson & Johnson Cases*, No. 2:15-cv-

05339, 2015 WL 5052377, at *8 (C.D. Cal. Aug. 24, 2015).

Because Hudson cites § 1446(b)(1) as the main mechanism by which it removed this case,

the only conceivable inference is that Hudson believes the state court severance of certain claims of

the Intervenor Petition on February 10, 2022, created a new case in state court. (Doc. 1-14). The

severance, Hudson certainly presumes, commenced a new lawsuit which only thereafter began the

30-day removal countdown pursuant to § 1446(b)(1). With this, the undersigned agrees. On March

14, 2022, Hudson removed the post-severance case to this Court. (Docs. 1, 1-15). The order in the

State Court Action severing Villalobos's fraudulent inducement and declaratory judgment actions

against the defendants in this case expressly created "a separate and independent lawsuit from the

[State Court Action]." (Doc. 1-14 at 3). The severance order further required the state court clerk to

assign the severed action a new cause number. (*Id.*; *see also* Doc. 1-15). Thus, the state court's severance order appeared to generate another case, ostensibly comparable to one filed anew.

Unaddressed in the Fifth Circuit is the issue of whether a state court severance of arguably removable claims is based on a 30-day period beginning at the initial service of the to-be-removed pleadings, or instead upon their severance from an ongoing action.[4] The undersigned must thus first decide whether, as a nominally new case in state court, the severed claims now before this Court were timely removed under § 1446(b)(1). The undersigned holds in the negative: the state court's severance of the instant claims did constitute a new case but was insufficient to begin the 30-day timer for removal under § 1446(b)(1). Section 1446(b)(1) explicitly pegs the removal deadline to either "the receipt by the defendant . . . of a copy of the initial pleading . . . , or . . . after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served." 28 U.S.C. § 1446(b)(1). Hudson presumably already possessed well in advance of the severance a copy of the Intervenor Petition containing the fraudulent inducement and declaratory judgment claims, which is the same set of claims removed to this Court. (Docs. 1, 1-4, 1-15).

No Texas court has appeared to weigh in on the issue of the necessity of service of an amended petition post-severance where there is a pre-severance service of process. The only court to have come sensibly close to the issue did so in the context of default judgment upon initial, post-severance service. *See Martinez v. Wilber*, 810 S.W.2d 461, 462–63 (Tex. App.—San Antonio 1991)

---

4. The parties dispute the application of some recent dicta and concurrences from *Williams* in their briefings. (Docs. 1, 6). Although the relevancy of *Williams* to this case's timeliness or procedural propriety is rather nebulous, the undersigned finds an analysis of the case at this juncture to be unnecessary. In *Williams*, Judge James C. Ho stated that, following a state court's dismissal of "non-diverse defendants from the [state court] case, the remaining diverse defendants would have thirty days to file a notice of removal under 28 U.S.C. § 1446(b)." *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 821 (2021) (Ho, J., concurring). However, Judge Ho keyed his statement to a state court's *dismissal* of "non-diverse defendants," and not the *severance* of certain claims without adjudication of their merits or justiciability. Elsewhere, Hudson in its Notice of Removal asserts that Judge Catherina Haynes's plurality opinion in *Williams* mentioned that the Fifth Circuit's rule is that the 30-day removal deadline begins only "*after* the state court concludes the claims are misjoined and severs all non-diverse parties." (Doc. 1 at 3) (emphasis in original); *see Williams*, 18 F.4th at 817 n.14. Yet, the portion of Judge Haynes's opinion pertains only to removal under § 1446(b)(3), the "other paper statute." *Williams*, 18 F.4th at 817 n.14. With no relevant discussion of § 1446(b)(1) in the *Williams* opinions, it cannot be said that the case is informative on the 30-day timeline under that section.

(mem. op.) (finding a citation for summons under Texas Rule of Civil Procedure 99 to require new cause number where "an order of severance . . . specifically establishe[d] a separate cause number"). Outside this very specific context, the undersigned has no guidance. If service of an amended summons post-severance were mandatory under state law, such service would have restarted the § 1446(b)(1) timeline, giving Hudson additional time to remove and allowing for fewer grounds for remand. Thus, examining all ambiguities of state law in the light most favorable to the party seeking remand, the undersigned determines that, presumptively, no service of an amended summons is required if the removing defendant has already been served pre-severance and the severed claims and parties are unaltered. *See Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007).

There was no new timeline for the then-extant cases. Although Hudson's March 14, 2022, removal was within a 30-day interval beginning on February 10, 2022, the date of the severance, the undersigned finds that the Intervenor Petition as initially filed on April 5, 2021, signifies the beginning of the sand trickle on the § 1446(b)(1) hourglass. March 14, 2022, was well beyond 30 days past the deadline of May 5, 2021. Accordingly, the Notice of Removal in Hudson's subsequent removal was not timely filed under § 1446(b)(1).[5]

### ii.   Other Paper and *Williams*

As noted above, since by March 14, 2022, the deadline for removing this case pursuant to § 1446(b)(1) had passed, the last option for the Notice of Removal to have been timely lies with § 1446(b)(3). Particularly, the only conceivable chance for survival in federal court for the instant Notice of Removal is if there is some "other paper" which triggered a secondary deadline. While Hudson has not expressly cited § 1446(b)(3) as a basis for its current removal attempt, the undersigned will proceed to analyze the Notice of Removal under this procedural bastion to ensure the Court maintains or lacks jurisdiction. Hudson relies on the Fifth Circuit's decision in *Williams v.*

---

5. The undersigned will discuss below the Court's ability to maintain subject matter jurisdiction in this case as a result of the subsequent removal based on diversity jurisdiction.

*Homeland Insurance Co. of New York* as authorizing its late removal in conjunction with the severance in the State Court Action. (Doc. 1 at 3–4). Aside from "other paper" referring to the state court severance, *Williams* seemingly would have no relevance to timeliness[6] or any other procedural issue at this stage. Therefore, the undersigned will firstly determine whether *Williams* authorized the instant removal, and secondly whether the removal was timely as a consequence.

Most conceivably, the impetus for this lawsuit was not the Fifth Circuit's *Williams* decision, released on November 30, 2021, but rather severance of the Intervenor Petition's fraudulent inducement and declaratory judgment claims from the remainder of the State Court Action, which took place on February 10, 2022. *See Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 817 n.14 (5th Cir. 2021). Each party beings their pleadings and briefings with their own explication of *Williams*, which seemingly would indicate its significance. (Docs. 6 at 7–8; 9 at 5–6).

It is hardly disputed that the state court's severance of the fraudulent inducement and declaratory judgment causes of action in the State Court Action shifted the postures of the case and limited the issues to be resolved. Of further agreement is that the application of *Williams* may prove detrimental to this Court's jurisdiction over this matter as removed. The primary dispute here is therefore whether the *Williams* decision authorized Hudson to remove this case following severance. (Docs. 1, 6, 9).

---

6. While Villalobos does not explicitly assert want of timeliness as a ground for remand, the undersigned holistically is only able to analyze the Motion to Remand and *Williams* under this guise. The Motion to Remand suggests that remand is necessary because Aim was not improperly joined, but also that even if it were, Hudson's post-severance action is not authorized under *Williams*. (Doc. 6). Thus, boiled down to basics, the Motion to Remand requests relief based on the inapplicability of *Williams*: if *Williams* does not apply, Hudson could not have removed the case post-severance, not even to argue improper joinder. The only conceivable basis for the half-baked syllogism that "*Williams* is inapplicable = Hudson cannot remove" would be that, without *Williams*, Hudson's removal will have been untimely. In other words, if *Williams* does not apply, Hudson's post-severance removal will have fallen outside of the timeline for removal under § 1446. In fact, the entire discussion of *Williams* in the Motion to Remand seems to be premised upon Villalobos's response to Hudson's use of *Williams* in the Notice of Removal to support the proposition that the "removal to federal court . . . is timely." (Doc. 1 at 3). Thus, the existential issue of timeliness is the bedrock of the *Williams* debacle before the Court.

The United States Court of Appeals for the Fifth Circuit released *Williams* on November 30, 2021, following this Court's Remanding Order, but before the state court's severance in the State Court Action. *Williams* involved a convoluted procedural posture; at base and in pertinent part, a class of plaintiffs sued in Louisiana state court diverse defendant Homeland Insurance ("Homeland"), among other diverse and non-diverse defendants, for state law direct action claims. 18 F.4th 806, 809 (5th Cir. 2021). Homeland removed the case to federal court, but the case was eventually remanded to state court based on a lack of diversity jurisdiction. *Id.* at 809–10. Back in state court, the Louisiana plaintiffs prevailed in their direct-action claims against Homeland and settled with all but one non-diverse defendant. *Id.* at 810.

In a related case, bad faith claims against Homeland were found by the Delaware Supreme Court to be barred by the statute of limitations. *Id.* Yet, the Louisiana plaintiffs amended their complaint against the remaining non-diverse defendant to add Homeland again as a defendant in a bad faith cause of action, which Homeland then removed under the guise of diversity jurisdiction. *Id.* In its secondary removal case, Homeland attempted to justify removal by arguing that the claims against the non-diverse defendant were "improperly and egregiously misjoined" with the bad faith claim asserted against Homeland. *Id.* The district court decided it retained jurisdiction only over the bad faith claim against Homeland and remanded the remaining claims against the non-diverse defendant based on the class plaintiff's "lack[ing] a reasonable basis for recovery," effectively remanding them. *Id.* at 811. The district court eventually dismissed the bad faith claim under claim preclusion based on the Delaware Supreme Court's holding, which the class plaintiff appealed.

On appeal, the Fifth Circuit was tasked with deciding whether the district court on the secondary removal possessed diversity jurisdiction under 28 U.S.C. § 1332. The Fifth Circuit, with Judge Catherina Haynes writing for a plurality, opened the substantive portion of the opinion by affirming the principle that the improper joinder of a non-diverse defendant can permit a district court to "disregard the citizenship of that defendant for the purposes of evaluating its jurisdiction."

14

*Id.* at 812. Applying the "traditional no-possibility-of-recovery test," the Court found that the class plaintiff could indeed prevail in Louisiana state court on the grounds asserted in the removed case against the non-diverse defendant. *Id.* at 813–14. The Court rejected elsewhere Homeland's urgings in support of the Eleventh Circuit's "fraudulent misjoinder" doctrine, which involves a defendant's removal based for improper joinder based on the "'egregious' misjoinder of parties" and as a matter of law "constitute[s] fraudulent joinder." *Id.* at 814 (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996)) (alterations in original). The Court, while not decrying the doctrine, refused to adopt it. Specifically, the Fifth Circuit acknowledged its prior direction that "*any* viable cause of action" against a non-diverse defendant necessitates remand of the entire case. *Id.* at 815 (emphasis in original). "Permitting a party to remove a case and then sever a diversity-destroying defendant notwithstanding viable claims against that defendant fundamentally conflicts with that statement." *Id.* The Fifth Circuit concluded by opining that Homeland "should have," if the non-diverse defendant "really were misjoined . . . moved to sever the claims in state court *and then* removed." *Id.* at 817 (emphasis in original). Thus, after exclaiming the fraudulent misjoinder doctrine as inapplicable in the Circuit, the district court was found unable to sever the non-diverse defendant, and diversity jurisdiction was therefore destroyed.

The *Williams* decision was indeed a windfall for Hudson. Villalobos attempts to distinguish the instant scenario here from *Williams* based on the Fifth Circuit's understanding that the severed claims were against "a separate defendant for a completely different cause of action." (Doc. 6 at 8). In sum, Villalobos maintains that *Williams* is inapplicable to this action and inapplicable to his claims for fraudulent inducement and declaratory judgment. (*Id.*). Hudson responds by characterizing the *Williams* decision as involving an anointment of a new misjoinder procedure which requires a defendant "to obtain severance of the misjoined case in state court and then remove the severed diverse case to federal court." (Doc. 9 at 6).

Hudson is correct in its reading. There, the Fifth Circuit was re-affirming the principle that "improper joinder is a narrow exception" to the complete diversity requirement in 28 U.S.C. § 1332(a), the federal statute. *Williams*, 18 F.4th at 815 (quotation marks omitted). "Improper joinder," as will be discussed below, is the method by which a diverse defendant can save an otherwise non-removable case in federal court, post-removal, where the only obstacle to federal court jurisdiction is a non-diverse defendant. *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006). Unlike the fraudulent misjoinder doctrine left unsanctioned in *Williams*, improper joinder applies where there is no possibility of recovery against the non-diverse defendant. *Jernigan v. Ashland Oil*, 989 F.2d 812, 815 (5th Cir. 1993). Similarly to fraudulent misjoinder, however, the improper joinder determination is made *by the reviewing federal court*. *See generally Williams*, 18 F.4th 806. It would be incredulous for, as Villalobos suggests, a removal based on improper joinder to require immediate remand because, upon its arrival, the federal court is unable to discuss improper joinder on the premise that it should have been done at the state court level.

The Fifth Circuit in *Williams* had observed that the proper procedure for solving the question of misjoinder was for the removing-defendant-to-be to "move[] to sever the claims in state court *and then* remove." *Williams*, 18 F.4th at 817. Here, Hudson seeks not to sever the claims against Aim, but instead to demonstrate that Villalobos's claims against Aim stand no reasonable possibility of recovery under an improper joinder theory. Put differently, Hudson's instant removal simply requests that this Court ignore Aim's citizenship for the purposes of determining whether complete diversity exists. (Doc. 1). This posturing is endorsed by *Williams*. It is arguable that, in *Williams*, the claims against the non-diverse defendant were for direct-action conduct and thus substantively unrelated to diverse defendant Homeland's own bad faith assertions. Villalobos's own argument supports this proposition. (Doc. 6 at 8). At the same time, the Fifth Circuit did not cabin its opinion for severance to exclude those instances involving "a separate defendant for a completely different cause of action." (*Id.*). Villalobos has presented no authority which would otherwise lead the undersigned to

16

conclude that the *Williams* court intended to circumscribe the improper joinder doctrine in this or any other way.

*Williams* only appears to require that, were there a misjoinder of claims involving the removing defendant to those concerning in-state defendants, those strictly involving the removing defendant be severed prior to removal. 18 F.4th at 817. Hudson in this instance only removed this case for the second time *after* the state court severance based on the apparent substantive differences in the case. Although it was upon the Original Plaintiffs' motion that the instant claims were severed, there is also no explicit requirement in *Williams* that the removing defendant be the one to instigate the severance. *Id.* The undersigned does not detect a reason to institute one at this time.

Even if Villalobos's characterization of *Williams* had some merit, it would still be insufficient. In this case, the fraudulent inducement and declaratory judgment causes of action against Aim and Hudson assert claims for conduct allegedly occurring *after* the initiation of the State Court Action. (Doc. 1-4). The Remanding Order acknowledged that the presence of non-diverse defendants defeated complete diversity, and the state court's severance eliminated all obstacles to diversity jurisdiction advanced in *Federal Action I* except for those pertaining to fraudulent inducement and declaratory judgment. (Doc. 1-14). Though the state court's order of severance does not contain in-depth analysis, the state court did sever the case in an order granting a motion to sever filed by the Original Plaintiffs, which itself was based upon the fraudulent inducement and declaratory judgment claims' optimal prosecution as a separate lawsuit. (Doc. 1-6). A closer examination confirms this: the Original Plaintiffs believed that Villalobos's "cause of action for fraudulent inducement and his claim for declaratory relief—both of which are directed exclusively against Aim and Hudson only—should be severed." (*Id.* at 9). Villalobos's instant causes of action can therefore be inferred to indeed involve "a completely different cause of action." (Doc. 6 at 8). At the very least, the removed claims before the Court entail causes of action based upon different conduct from that which was the subject of the initial state court lawsuit. The mere fact that some

claims pertaining to Aim remain in state court does not mandate this Court's circumvention of *Williams*. The causes of action before this Court, accordingly, are distinct from those asserted in and live before the State Court Action.

To be clear, to the extent it can be argued that the severance of the instant claims in state court would not have allowed on its own for this subsequent removal in early 2021 at the time of this Court's Remanding Order, the Fifth Circuit's decision authorized such post-severance removal. In particular, when read in conjunction with the "improper joinder" doctrine, *Williams* stands for the position that the severance of a facially proper claim against a non-diverse defendant in a removed diversity action should only be done in state court. As to improper joinder of certain defendants with related causes of action, therefore, federal courts retain their ability to adjudicate such preliminary issues as whether a claim against a non-diverse defendant is proper on its face. *Compare Williams*, 18 F.4th at 815 (emphasizing that "improper joinder is a narrow exception to § 1332(a)'s complete diversity requirement") (quotation marks omitted), *with id.* at 817 n.14 (noting the "removal deadline [under § 1446(b)(3)] does not start running until *after* the state court concludes the claims are misjoined and severs all non-diverse parties").

The only other reasonable interpretation of *Williams* is that fraudulent misjoinder—a doctrine "greatly broade[r]" than improper joinder—is an improper basis for assuming diversity jurisdiction in federal court. *Williams*, 18 F.4th at 815. Thus, the Fifth Circuit was merely relegating to state courts, and displacing any removing defendant's preemptive responsibility for, the task of determining whether a defendant was "egregiously" misjoined. *Id.* at 814, 816 (discussing "federal court severance" and fraudulent joinder). It is not readily apparent that anything more can or should be gleaned from the opinion. Accordingly, *Williams* is applicable and informative here.

With the propriety of *Williams* cemented, the undersigned finds that the State Court Action severance constituted "other paper" as defined by § 1446(b)(3). "Other paper" initially was found by the Fifth Circuit to only include those documents produced by a voluntary act of the plaintiff. *See*

*Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 524 (5th Cir. 1961) (observing that "such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff"); *see also Nanez v. Sanchez*, No. SA-08-CA-485-FB, 2009 WL 10669600, at *4 (W.D. Tex. Feb. 13, 2009) (finding procedural defects as to removal on the basis that "both items of new evidence were generated by defendants"), *report and recommendation adopted*, No. SA-08-CA-485-FB, 2009 WL 10669788 (W.D. Tex. Mar. 6, 2009). In *S.W.S. Erectors*, however, the Fifth Circuit refined its understanding of the "other paper" trigger, allowing the *defendant* to submit a deposition of the plaintiff's president to constitute a "new paper or event that changed the facts regarding the removableness of the case." *See S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

Since *S.W.S Erectors*, district courts have found that other acts or events not predicated upon the plaintiff's voluntary act can constitute an "other paper." *See, e.g.*, *Green v. R.J. Reynolds Tobacco Co.*, No. H-99-2579, 2000 WL 33993335, at *9–10 (S.D. Tex. Aug. 16, 2000) (rejecting the argument that Fifth Circuit precedent could not constitute a new factual basis), *aff'd*, 274 F.3d 263 (5th Cir. 2001); *see also Rupert v. Winter*, No. 3:10-CV-0799-N, 2012 WL 13102348, at *5 (N.D. Tex. Jan. 24, 2012); *Lynd Co. v. RSUI Indem. Co.*, No. SA-08-CV-00546-XR, 2008 WL 11417404, at *3–5 (W.D. Tex. Oct. 23, 2008) (applying the "voluntary-involuntary" rule post-removal to a state court severance granted upon defendants' motion). This "judge-made exception" to the removability requirements under §§ 1441 and 1446 is known as the "voluntary-involuntary rule." *Scout 5 Props., LLC v. Acadia Ins. Co.*, No. 2:21-cv-00231-JRG-RSP, 2021 WL 5051564, at *2 (E.D. Tex. Oct. 31, 2021). In sum, "other paper" refers to an ever-broadening array of documents and evidence which may affect removability of a given case, including but seemingly not limited to other courts' precedents and orders. *See Bolger v. Utermohlen*, 485 F. Supp. 3d 588, 593 (E.D. Pa. 2020) (finding a state court severance of certain claims to be an "order that created complete diversity," giving the defendant "30 days to remove the case" under § 1446(b)(3)). Thus, if there were any doubts about

whether a severance in state court of certain claims could constitute "other paper," *Williams* resolved them.

In this case, the Court's Remanding Order directed that the entirety of *Federal Action I* be remanded for want of complete diversity. *Federal Action I*, No. 4:21-CV-00022-DC (W.D. Tex. Apr. 14, 2021) (ECF No. 52). Following remand and *Williams*, the state court severed Villalobos's fraudulent inducement and declaratory judgment claims. (Doc. 1-14). Clearly, the state court's February 10, 2022, severance order, not made by motion of Hudson or Aim here, constituted an "order or other paper" under § 1446(b)(3). Hudson, now operating under the blessing of *Williams*, filed its secondary removal on March 14, 2022, just within the 30-day timeframe allotted by the February 10, 2022, severance order. (Doc. 1). As a result, Hudson's secondary removal was timely based upon the "other paper" severance order in the State Court Action.

Therefore, because the severance in the State Court Action constitutes an "other paper" under § 1446(b)(3), this secondary removal was timely filed. The undersigned now turns to the last obstacle to diversity jurisdiction in this case: the propriety of Aim's joinder to Villalobos's two removed causes of action.

**B.  28 U.S.C. § 1441(b) and Improper Joinder[7]**

The parties agree that the sole issue concerning the Motion to Remand is whether Aim has been improperly joined in Villalobos's causes of action for fraudulent inducement and declaratory judgment. If Aim has been so joined and this case is otherwise properly before the Court, the Court should deny the Motion to Remand, dismiss Aim from this suit, and retain jurisdiction. In resolving

---

7. In the Fifth Circuit, the terms "improper joinder" and "fraudulent joinder" are used interchangeably. *See Williams v. Homeland Ins. Co.*, 18 F.4th 806, 811–13 (5th Cir. 2021) (using "fake," "fraudulent," and "improper" to describe the phenomenon); *see also Martinez v. Peterbilt Motors Co.*, No. SA-04-CA-0332-RF, 2004 WL 3218388, at *1 n.2 (W.D. Tex. Nov. 10, 2004) ("[T]he Fifth Circuit adopts the term 'improper joinder' as more accurately characterizing the concept that is frequently referred to as 'fraudulent joinder.'").

this question, a couple preliminary questions must be answered: (1) is this is ripe for consideration?; and (2) is there a reasonable possibility that a state court would rule against Aim on either claim?

An action based upon diversity jurisdiction under 28 U.S.C. § 1332(a) and removed to federal court must be remanded if even one of the "defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). However, "a case may still be removed where a claim against an in-state defendant is dismissed because of fraudulent joinder." *Wilkins v. Arthur J. Gallagher & Co.*, No. MO-10-CV-40, 2010 WL 11652141, at *3 (W.D. Tex. May 12, 2010) (citing *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006)), *report and recommendation adopted*, No. MO-10-CV-040, 2010 WL 11652183 (W.D. Tex. May 27, 2010). A non-diverse or forum-defendant is improperly joined "such that its citizenship can be ignored" for the purpose of evaluating the case's invocation of diversity jurisdiction if the removing party shows one of the following: (1) "actual fraud in the pleading of jurisdictional facts; or (2) [that] the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court." *Williams v. Homeland Ins. Co.*, 18 F.4th 806, 812 (5th Cir. 2021) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). The removing party bears a "heavy" burden in establishing improper joinder. *Id.* (citation omitted); *Argent Grp. LLC v. Mass. Bay Ins. Co.*, No. SA-16-CA-802-FB, 2016 WL 11546849, at *3 (W.D. Tex. Oct. 19, 2016). Thus, a court is to perceive "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Baldwin v. Athens Gate Belize, LLC*, No. A-19-CV-1234-LY-SH, 2020 WL 1854830, at *3 (W.D. Tex. Apr. 13, 2020) (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

In this instance, Hudson has presented no allegations of Villalobos's own fraudulent pleadings. Instead, Hudson premises its improper joinder claims upon the second improper joinder mechanism, that Villalobos is unable to establish a cause of action against Aim in state court. (Doc. 9 at 17) ("[There is n]ot even a theoretical possibility of recovery by [] Villalobos against Aim under

21

Texas law."). Under this mechanism, the court must consider "whether the [removing] defendant has demonstrated that there is *no possibility* of recovery by the plaintiff against the in-state defendant." *Graves v. Decca Consulting*, No. PE:20-CV-00021-DC-DF, 2020 WL 10317466, at *2 (W.D. Tex. June 11, 2020) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)) (emphasis added); *see also Jernigan v. Ashland Oil*, 989 F.2d 812, 815 (5th Cir. 1993). If a state court has not yet ruled on the merits of the plaintiff's claims, the federal court asks whether "there is any reasonable possibility that a state court would rule against the non-diverse defendant." *Hoyt v. Lane Const. Corp.*, 927 F.3d 287, 296 (5th Cir. 2019) (internal citation and quotation marks omitted). No state court has ruled on the merits of Villalobos's fraudulent inducement and declaratory judgment claims. Accordingly, the undersigned must consider whether there is a reasonable possibility a state court would rule against Aim on these claims.

In conducting this analysis, a court "may resolve the issue in one of two ways." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). On one hand, the court may "may conduct a [Federal] Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* If a plaintiff can survive a Federal Rule 12(b)(6) challenge, there is no improper joinder, though the focus of the inquiry "must be on the joinder[ and] not the merits of the plaintiff's case." *Id.* Under a Federal Rule 12(b)(6) analysis, the complaint "must have contained enough facts to state a claim to relief that is plausible on its face." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) (quotation marks omitted).

Where fraud is pleaded in a complaint, however, Federal Rule 9(b)'s particularity requirement is imposed. *See Destino Energy LLC v. LRH Energy Cap. LLC*, No. 4:21-cv-02364, 2022 WL 545078, at *3 (S.D. Tex. Jan. 27, 2022); *see also* Fed. R. Civ. P. 9(b). A fraudulent inducement claim removed to federal court must therefore include the "who, what, when, where, and how." *Bukowski v. Liberty Ins. Co.*, No. SA-22-CV-0272-JKP, 2022 WL 1625173, at *4 (W.D. Tex.

May 20, 2022) (citing *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). In other words, a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Molina v. Am. Access Cas. Co.*, No. SA-21-CV-00363-XR, 2021 WL 3639790, at *5 (W.D. Tex. Aug. 17, 2021) (quotation marks omitted) (citing *Williams v. VMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

On the other hand layeth the rare instance in which "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Smallwood*, 385 F.3d at 573. "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The Fifth Circuit has cautioned that this more holistic inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant." *Id.*; *see Odar v. Felix Energy Holdings II LLC*, No. PE:21-CV-00079-DC-DF, 2022 WL 1115407, at *7, *9 (W.D. Tex. Apr. 12, 2022), *report and recommendation adopted*, No. PE:21-CV-079-DC, 2022 WL 1514644 (W.D. Tex. May 13, 2022) (considering an "Insurance Document" as "substantial evidence undisputed [] by [p]laintiff" in performing "other paper" improper joinder analysis). The "motive or purpose of the joinder of in-state defendants is not relevant." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (quoting *Smallwood*, 385 F.3d at 574). The potentially broader scope associated with the summary inquiry is the only distinction between a pure Federal Rule 12(b)(6) analysis and an infrequent but enhanced Federal Rule 12(b)(6)-type analysis. *See Escuadra v. Geovera Specialty Ins. Co.*, 739 F. Supp. 2d 967, 977 n.12 (E.D. Tex. 2010) (observing there being "no analytical difference" between the two analyses).

The parties appear to utilize at least one of each of the different standards in their briefings. Villalobos argues his Motion to Remand under an ostensibly Federal Rule 12(b)(6) analysis, but makes several references to set of emails affixed as an exhibit to his Intervenor Petition. (*See*

*generally* Doc. 6). Hudson premises its position on "limited remand-related evidence." (Doc. 9 at 7). In particular, Hudson submits to the Court a copy of the Insurance Policy as well as "[a]n email exchange between counsel for [] Villalobos and counsel for Aim." (*Id.* at 1–2).

The parties agree that the Insurance Policy was in place as between Hudson and Aim. (Docs. 6 at 3; 9 at 8; 9-1 at 6). As to Hudson's proffered email exchange, Villalobos does not dispute its relevance, existence, or validity. (Doc. 10 at 5). Indeed, Villalobos claims the email exchange "only confirms Hudson's and Aim's bad intentions" in inducing Villalobos to enter into a contract. (*Id.* at 5–7). True it may be that the utility and scope of the email exchange in proving or defeating the existence of any agreement are disputed; this is insufficient to invoke an evidentiary stranglehold on the analysis. *See Baldwin v. Athens Gate Belize, LLC*, No. A-19-CV-1234-LY-SH, 2020 WL 1854830, at *4–5 (Apr. 13, 2020) (denying a summary inquiry based on the parties' dispute of the *contents* of the proffered evidence, as opposed to their existence or relevance). Additionally, the policy limits and obligations due under the Insurance Policy and any alleged contract are a primary topic of dispute in this case; examining a copy of said policy and emails would indubitably assist the Court's resolution of the instant Motion to Remand. *See Ameen v. Merck & Co., Inc.*, 226 F. App'x 363, 369 (5th Cir. 2007) (unpublished) (approving consideration of extraneous evidence for "other paper" analysis where the trial court "would have been unable to appreciate fully the basis for its possible jurisdiction without examining [it]"). Because the pieces of factual evidence offered by Hudson and referenced by Villalobos are substantially discrete, undisputed, and central to this case, the undersigned finds that a summary inquiry is necessary here.

### 1.    Fraudulent Inducement

The removed claims against Aim are for fraudulent inducement and declaratory judgment. (Doc. 1-4 at 27–30). The viability of each will be analyzed under Texas law. *See Wingate v. Kerr-McGee Rocky Mountain Corp.*, 353 F. Supp. 2d 779 (E.D. Tex. 2005).

24

Beginning with fraudulent inducement, such is a type of fraud, requiring the elements of fraud to be established "as they relate to an agreement between the parties." *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893, 913 (Tex. App.—Houston [1st Dist.] 2007, pet denied) (Keyes, J., concurring and dissenting); *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). A plaintiff bringing a claim for fraudulent inducement must allege that "a false material representation was made that (1) was known to be false when it was made, (2) was intended to be acted upon, (3) was relied upon, and (4) caused injury." *Leax v. Leax*, 305 S.W.3d 22, 29 (Tex. App.—Houston [1st Dist.] 2009) (mem. op.). Thus, fraudulent inducement is "a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Holloway v. Dekkers*, 380 S.W.3d 315, 324 (Tex. App.—Dallas 2012) (mem. op.) (citation omitted). Most importantly, a claim for fraudulent inducement "presupposes that a party has been induced to enter a contract." *Haase*, 62 S.W.3d at 798. Therefore, as Hudson observes, a lack of allegations sufficient to support an enforceable, binding agreement would preclude Villalobos's fraudulent inducement claim. (Doc. 9 at 13).

### i.      Existence of a Contract

A court's preliminary step to engaging in a substantive fraudulent inducement analysis is to determine whether a contract existed. Under Texas law, a valid contract requires "(1) an offer; (2) acceptance; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). "The elements of written and oral contracts are the same and must be present for a contract to be binding." *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). The agreement need not be formalized; an email can corroborate the existence of a valid, enforceable agreement. *Sw. Elec. Contracting Servs., Ltd. v. Indus. Accessories Co.*, No. MO:18-CV-00123-DC, 2022 WL 1468384, at *28 n.19 (W.D. Tex. May 10, 2022) (citing *Shirvani v. Celebrity Healthcare Mgmt., LLC*, No. 05-19-

25

00192-CV, 2020 WL 1887894, at *5 (Tex. App.—Dallas Apr. 16, 2020, pet. denied)). Settlement agreements are no exception, for "settlement agreements—like all other contracts—are unenforceable if they are procured by fraud." *Transcor Astra Group S.A. v. Petrobras America Inc.*, -- S.W.3d -- , 2022 WL 1275238, at *6 (Tex. Apr. 29, 2022).

Whether a contract exists lies at the foundation of this case. Hudson presents a challenge to the Purported Settlement, arguing that the fraudulent inducement claim based on the Purported Settlement is unenforceable as a matter of law, and otherwise not binding due to a lack of agreement on the terms of an alleged release provision. (Doc. 9 at 12–14). Villalobos in his Intervenor Petition asserts that a contract was formed at the September 28, 2020, mediation, which he terms was a "Rule 11 Agreement." (Doc. 1-4 at 11). Purportedly at this mediation were counsel for Villalobos, Aim, Hudson, and the Original Plaintiffs in the State Court Action. (*Id.* at 9–12). At the mediation, Villalobos claims that Hudson "promised to tender its policy limits of $5,000,000" to the attending plaintiffs, including himself. (*Id.* at 11). Following mediation, the attendants purportedly entered into a written agreement "contained in a series of emails," the terms of which no party disagreed to. (*Id.*) (citing "emails among all parties representing the Rule 11 [Purported Settlement], dated September 28, 2020"). In this Purported Settlement, Villalobos continues, Aim and Hudson "represented that they would tender the policy limits of the Insurance Policy, $5,000,000" and "place the funds into the [state court's] registry," and that the proceeds would be allocated in part to Villalobos pending a jury trial on proportional damages. (*Id.*). Villalobos alleges that Sergio Chavez, counsel of record for Aim, is responsible for all these representations. (Doc. 6 at 11). As a result of these representations, Villalobos maintains, he was "induced [] to cease prosecuting his claims" then-pending in the State Court Action against Aim and Hudson. (Docs. 1-4 at 10–11; 6 at 11–12).

The undersigned holds that Villalobos has sufficiently pleaded the existence of a contract.[8] One glaring issue for the undersigned is that Villalobos appears to presume the existence of a contract, refusing to expressly identify which allegations in his Intervenor Petition correspond to the contractual elements. Thus, each element of a contract must be inferred, if at all, from the Intervenor Petition, if all the factual allegations are taken as true under the Federal Rule 12(b)(6) standard. Beginning with the first element, a representation by Aim that it, in conjunction with Hudson, would tender the proceeds of the Insurance Policy resembles an offer. (Doc. 1-4 at 11). It can furthermore be inferred that the exchange offered was that Aim and Hudson would pay out the Insurance Policy in part to Villalobos in exchange for his cessation of prosecuting his claims against Aim. (*Id.*); *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38 (Tex. 1998) (discussing insurance payouts as offers to settle).

Acceptance and a meeting of the minds are evidenced by Villalobos's subsequent hold on said prosecution against Aim. (Doc. 1-4 at 11). If it is assumed that Villalobos did indeed stop prosecuting his claims against Aim and Hudson and preparation for trial in said case for the time being, it would be a dubious thought to believe, that Villalobos engaged in such action out of coincidence or altruism. These terms were evidently consented to by Aim's counsel, Mr. Chavez, in response to an email from Reagan Sahadi, counsel for the Original Plaintiffs in the State Court Action, memorializing the Purported Settlement agreement at the September 28, 2020, mediation.[9] This email, on which Christopher Hamilton, one of Villalobos's counsel, was copied, reads:

---

8. By the face of the Intervenor Petition and the Villalobos's affixed email exchanges, it can be inferred that Villalobos claims a contract was created on September 28, 2020, the day of the mediation. Hudson's email exchange is dated November 30, 2020. (Doc. 9-2). Without commenting on the veracity of the contents of the emails, Hudson's emails were exchanged over two months beyond the date of the alleged contract formation. The issues in this case revolve around whether a contract was created on September 28, 2020, not any party's afterthoughts about said agreement. Therefore, Hudson's email exchange from November of that year, were it the proverbial snail, will be taken with a grain of salt.

9. The undersigned notes that, if it is true that a contract was entered into at the September 28, 2020, mediation, Villalobos simply has not provided enough factual allegations to indicate consent to the terms of any contract, not to mention the execution or delivery of a contract with a binding intent, established at the mediation alone. The

> AIM Trucking and Jorge Machado (to the extent that will be explained in the release) and Hudson Ins. Co. have agreed to settle with all plaintiffs/intervenors jointly for the remaining policy limits of $5,000,000.00 to be interpled into the registry of the Court pending a trial to split those proceeds.
>
> …
>
> [Mr. Chavez], if this does NOT reflect the general agreement please let me know. Otherwise please acknowledge same.

(Doc. 1-4 at 34). Mr. Chavez responded to this email, "acknowledg[ing] that is correct." (*Id.* at 33).

Villalobos[10] characterizes the actual contract as being this set of emails' purported memorialization of the mediation's Purported Settlement. (Doc. 1-4 at 12). A memorialized writing can evidence the existence of a contract where the initial agreement "contain[s] all material terms." *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013). "The material terms of a contract are determined on a case-by-case basis." *Id.* Settlement agreements in particular have been allocated somewhat broader enforcement, extending to even where they "contemplate additional documentation or leave open certain terms for future negotiation." *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 747–48 & n.8 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Settlement agreements in Texas tend to be formed pursuant to Rule 11 of the Texas Rules of Civil Procedure, which reads:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

---

memorialization emails from September 28 are consequently the only method by which Villalobos could demonstrate the existence of a contract.

10. The email exchange proffered by Hudson from November 30, 2020, between one of Villalobos's counsel, Damian Williams, and Mr. Chavez, appears to signify Mr. Williams's understanding that the settlement was only "tentative." (Doc. 9 at 2). The import of this exchange, however, particularly as to Mr. Williams's "I knew this" language, is disputed. (*See* Doc. 10 at 6–7). Villalobos claims Mr. Williams was suspecting Mr. Chavez's backpedaling on the Purported Settlement and was only seeking Mr. Chavez's confirmation that the settlement was not to be honored. Villalobos, as plaintiff resisting removal, receives the benefit of the principle in favor of remand, which corresponds to a presumption that Villalobos did not believe the Purported Settlement was tentative. *See Heaton v. Monogram Credit Card Bank of Ga.*, 231 F.3d 994, 996 (5th Cir. 2000).

Tex. R. Civ. P. 11. In settlements made pursuant to Rule 11 of the Texas Rules of Civil Procedure, the material terms include "payment terms and release of claims." *MKM Eng'rs, Inc. v. Guzder*, 476 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2015) (mem. op.).

The Intervenor Petition also satisfies the remaining element, that of a binding intent. In the same email exchange Villalobos cites, both Mr. Sahadi—the original sender—and Mr. Chavez acknowledge that a "release . . . summing up this agreement" is to be created. (Doc. 1-4 at 33–34). Hudson explains that this "release" language itself proves the exchange to be neither an agreement itself, nor evidence of one, and that there must have been "written signed memorialization of the other material details of the parties' agreement." (Doc. 9 at 11–14). This is of no matter. The "intention to execute future documentation does not preclude the email" or prior discussions from being an enforceable contract. *Shirvani v. Celebrity Healthcare Mgmt., LLC*, No. 05-19-00192-CV, 2020 WL 1887894, at *5 (Tex. App.—Dallas Apr. 16, 2020, pet. denied). Parties to an informal agreement, even if they contemplate a formal writing, can still "form[] . . . a binding contract even if the formal writing is never executed." *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 645 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Often, the question becomes one of whether the communication "shows an intent to be bound and contains all material terms." *Id.* Here, the undersigned finds that the emails demonstrate an intent to be bound and do contain all material terms. If the language pertaining to "settle" is vague, the emails' "release" language bodes in favor of a contract, since it signifies an intent for the settlements to act as a release of claims. Hudson cannot disprove the existence of a contract merely by pointing to the parties' undisputed intent to put into final writing and with official language a binding agreement.

Aside from this "release" language, Hudson's insistence here that the emails or prior discussions from September 28, 2020, required some condition precedent are unfounded. *See Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 673–74 (Tex. 2020) (finding failure of contract formation where the parties "agreed that a definitive agreement was

a condition precedent to contract formation"). The parties here allegedly formed an agreement on September 28, 2020, and there are no allegations that the parties sought to only form a contract after the terms were reduced to a final writing. Though perhaps stated in vague terms, Mr. Chavez confirmed that Aim and Hudson "agreed to settle with all plaintiffs/intervenors," which would include Villalobos. (Doc. 1-4 at 34). It is reasonable extrapolate from this statement that Villalobos would cease his litigation activities, which he claims to have done in response to the mediation discussions. There was also a clear intention to be bound by any release or settlement, with no contingency for future material discussions or terms. Villalobos and Aim, if the facts alleged in Intervenor Petition are to be believed, intended to bind each other to the Purported Settlement discussed at mediation and memorialized in the emails.

Hudson's contentions that "material" or "essential" terms of the Purported Settlement are missing from the September 28, 2020, email exchange are equally baseless. Hudson's responses provide no indication as to which terms of the agreement were material yet absent. (*See generally* Doc. 9). The undersigned detects, as informed by the Intervenor Petition, the presence of two material terms: settlement of claims between Villalobos, Aim, and Hudson, and for the $5,000,000 worth of Insurance Policy proceeds to be interpled with the state court and divvied up amongst the claimants following a jury trial on apportionment. (Doc. 1-4 at 34). These terms are codified in the emails and represent the material release of claims and payment terms provisions, respectively.

Hudson's last assertion that Villalobos has "confirmed" that the Purported Settlement "is not a binding agreement" is unpersuasive. (Doc. 9 at 14). In particular, Hudson contends that Villalobos's sought-after declaration admits that "the subject email exchange is not a binding agreement." (*Id.*). The primordial issue at this juncture is whether the Purported Settlement upon which Villalobos allegedly relied and which permitted depletion of the Insurance Policy funds was invalid not as a matter of contract formation, but as a matter of enforceability against Villalobos himself. Hudson's argument is premised on the argument that any agreement was not formed in

accordance with Texas state contract law. This theory, as noted, is markedly distinguishable from Villalobos's own argument, which is that the Purported Settlement cannot be enforced against him. *Franco v. Ysleta Indep. Sch. Dist.*, 346 S.W.3d 605, 609–10 (Tex. App.—El Paso 2009) (mem. op.); *see also Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 762–64 (Tex. App.—Houston [14th Dist.] 2012) (mem. op.). The undersigned cannot accept Hudson's characterization here.

Viewing all pleaded facts in favor of Villalobos, all elements for the formation of a valid contract have been satisfied. Therefore, the undersigned concludes that Villalobos's Intervenor Petition sufficiently pleads the formation of a valid contract, including but not limited to one established under Rule 11 of the Texas Rules of Civil Procedure as well as one under common law.

### ii.    Fraudulent Inducement Elements

With a contract having been established, the undersigned turns to the elements idiosyncratic to fraudulent inducement, premised on the presumption that a valid contract was properly pleaded. These elements are: "a false material representation was made that (1) was known to be false when it was made, (2) was intended to be acted upon, (3) was relied upon, and (4) caused injury." *Leax v. Leax*, 305 S.W.3d 22, 29 (Tex. App.—Houston [1st Dist.] 2009) (mem. op.).

The undersigned concludes that Villalobos has sufficiently alleged facts satisfying a fraudulent inducement claim against Aim. Villalobos has alleged that Aim and Hudson made material representations at the mediation and via email that the $5,000,000 proceeds of the Insurance Policy, after being deposited with the state court, would be allocated amongst the various plaintiffs, including Villalobos, *after* a jury trial. (Doc. 1-4 at 11). Villalobos has pleaded that Aim and Hudson's representations were made with either the knowledge of their falsity, or "recklessly without knowledge of their truth"; since they had no intention of actually depositing the proceeds with the state court, and instead desired to limit Villalobos's total recovery. (*Id.* at 11–13, 28). Aim and Hudson knew these representations, Villalobos asserts, would induce Villalobos to rely on them and

temporize his prosecution. (*Id.* at 13). Villalobos alleges that Aim and Hudson's false representations were intended to induce him to "forego additional discovery," avoid sending insurance demands, and "halt seeking other options to resolve his claims." (*Id.* at 27). Villalobos allegedly did cease his litigation activities in reliance on these representations. (*Id.* at 11–13).

Villalobos additionally claims that Aim and Hudson "negotiated and executed a separate settlement" with the Original Plaintiffs in January of 2021. (*Id.* at 12). Aim and Hudson purportedly engaged in these clandestine settlements without exclaiming to Villalobos that they no longer intended to comply with its prior representations and the Purported Settlement, all while knowing Villalobos claimed the most damages of all the claimants. (*Id.* at 12–13). He lastly contends that the remainder to be paid to Villalobos and another plaintiff after these additional settlements were paid would only amount to $550,000, which hardly would account for his claimed $2,300,000 worth of damages. (*Id.* at 13, 27, 29). Aim and Hudson were purportedly aware that Villalobos could not be compensated for all his claimed injuries under the Insurance Policy if the other State Court Action plaintiffs were also satiated. (Doc. 1-4 at 27). The representations to Villalobos will be the focus of litigation in the fraudulent inducement action, and weigh heavily here in favor of Villalobos. *See Syrian-American Oil Corp. v. SSPD Petrol. Dev. B.V.*, No. 01-10-00224-CV, 2011 WL 1328373, at *13 (Tex. App.—Houston [1st Dist.] Feb. 24, 2011) (mem. op.). Thus, every element of fraudulent inducement has been pleaded here. *See Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 727–28 (S.D. Tex. 2010).

Moreover, the Federal Rule 9(b) requirement is satisfied: Villalobos has asserted the "who, what, when, where, and how" of Aim and Hudson's purported fraudulent misrepresentations. *Bukowski v. Liberty Ins. Co.*, No. SA-22-CV-0272-JKP, 2022 WL 1625173, at *4 (W.D. Tex. May 20, 2022) (citing *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). Allegedly, Aim and Hudson were responsible for the inducement of Villalobos's settlement agreements and subsequent cessation of his litigation activities in September of 2020. Villalobos

asserts the misrepresentations occurred in-person at the mediation, as well as via email that same day. These misrepresentations purportedly led Villalobos to rely on the Purported Settlement, causing him injury. Therefore, Villalobos has sufficiently pleaded a fraudulent inducement claim against Aim.

To counter Villalobos's allegations, Hudson advances several tangential arguments that do not expressly refute the existence of a contract. The most prominent of these is the claim that Aim does not owe a duty to Villalobos in connection with purported "[s]ettlement [n]egotiations." (Doc. 9 at 10). Hudson seems to characterize the fraudulent inducement action as one in which Villalobos is "su[ing] its litigation opponent over conduct in contested settlement negotiations while the underlying liability case against the insured is pending." (*Id.*).

The undersigned is not convinced. While the undersigned agrees with the proposition that no duty has been recognized in Texas as between the insured and a claimant while settlement negotiations are ongoing, such statement does not describe the predicament before the Court. As determined above, sufficient allegations exist for a state court to conclude that the Purported Settlement and subsequent email exchanges on September 28, 2022, constituted an enforceable Rule 11 agreement. Simply put, Villalobos is not merely suing for misrepresentations made during negotiations; rather, he brings this lawsuit for contract-establishing communications on which he reasonably relied. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) ("Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations.") (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)). Hudson's authorities in this regard have no effect on this case.

Hudson also brings two challenges to Villalobos's damages assertions, both of which are equally ill-omened. First, Hudson maintains that Villalobos's fraudulent inducement claim fails on the additional ground that the damages sought by Villalobos against Aim are "hypothetical and contingent" on the outcome of the State Court Action. (Doc. 9 at 15). This challenge is presented as one based upon standing and ripeness, premised on the apparent need for Villalobos to have had his

damages legally determined before instigating this cause of action. (*Id.*). Second, Hudson argues that the relief Villalobos requests here are duplicative of those he seeks in the ongoing State Court Action. (*Id.* at 15–16).

Examining the hypothetical and contingent argument first, Hudson is indeed correct that Aim's specific pecuniary liability, if anything, is yet to be determined. It is also accurate that a case is only ripe where it does not depend on "potential, contingent or hypothetical facts." (*Id.*) (citing *Camarena v. Tex. Emp. Comm'n*, 754 S.W.2d 149, 151 (Tex. 1998)). The net of the ripeness issue, however, is not as broad as Hudson is trying to cast. In particular, standing focuses on the question of the *parties* which may bring an action, whilst ripeness "examines *when* that action may be brought." *Lake v. Cravens*, 488 S.W.3d 867, 888 (Tex. App.—Fort Worth 2016) (emphasis added). In particular, when a lawsuit is filed, "ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). Hudson in this suit is only challenging the contingency of the damages Villalobos asserts, and is not advocating that a party other than Villalobos would be able to bring the same suit against Aim. Therefore, Hudson's objections as to damages will be construed as challenges only to the ripeness of the instant claims.

The undersigned is not persuaded by Hudson's arguments, and finds that this case is indeed ripe. The logical extension from the ripeness and general damages doctrines is that damages must be reasonably established by the factual allegations by the time the fraudulent inducement suit is filed. According to the Intervenor Petition, Villalobos suffered physical injuries from the truck wreck; he claims he also suffered non-physical injuries from a subsequent incident in bargaining by Aim and Hudson's alleged fraud. (*See generally* Doc. 1-4). If a fraud did occur as Villalobos claims, his injury has likely already consummated in the form of his unnecessary cessation of litigation activities and is therefore no longer contingent or hypothetical. *See Ivy v. Garcia*, No. 03-20-00448-CV, 2022 WL 189820, at *4 n.2 (Tex. App.—Austin Jan. 21, 2022) (mem. op.) (observing that a plaintiff

establishes injury by showing that he "would not have entered into the [] contract but for the alleged misrepresentation or fraudulent nondisclosure").

Hudson proposes that *In re Essex Ins. Co.*, 450 S.W.3d 524 (Tex. 2014), lends support to its contention that Villalobos's case is not yet ripe. (Doc. 9 at 15). *Essex* is distinguishable from the instant case. In *Essex*, the reviewing court discussed the "no direct action rule," which provides that "an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment." *Essex*, 450 S.W.3d at 525. The *Essex* court determined that the no direct action rule precluded the injured plaintiff's suit against the liability insurer in a declaratory judgment action where the plaintiff had not proven the tortfeasor was liable to him for his injuries. *Id.* at 526–27. *Essex* does not apply here to preclude Villalobos's claim against Aim, since Aim is the alleged *tortfeasor*, and Hudson the insurer. The mystery as to how *Essex* and the no direct action rule are to apply to the alleged tortfeasor here, Aim, instead of the insurer, Hudson, is seemingly dispensed to the ether. The declaratory judgment claim here furthermore is against Aim and Hudson for the same alleged conduct—Hudson not for being Aim's insurer throughout the truck wreck, but rather as one of the persons responsible for looping Villalobos into the Purported Settlement. Effectively, Villalobos's declaratory judgment action against Hudson is for its fraudulent misrepresentations and the damages caused therefrom, divorced from the underlying truck wreck.

The undersigned turns to the concerns with double recovery. Hudson claims Villalobos's damages in this case are duplicative of those sought in the State Court Action. Damages sought from a fraudulent inducement claim "must flow directly from [the underlying] contract." *ISG State Operations, Inc. v. Nat'l Heritage Ins. Co., Inc.*, 234 S.W.3d 711, 718 (Tex. App.—Eastland 2007) (mem. op.). Two types of direct damages are available for fraudulent inducement, as is the case with all Texas common-law fraud: out-of-pocket damages, as well as benefit-of-the-bargain damages. *Anderson*, 550 S.W. 3d at 614. If a contract or promise to perform is found to be unenforceable, "the

benefit-of-the-bargain measure is not available because one can have no compensable expectancy from a bargain that is not binding." *Id.*

The undersigned is unconvinced in this regard as well. Assuming *arguendo* that Hudson's reading of the bases for recovery between all of Villalobos's claims is accurate, Hudson points to no applicable authority indicating that a plaintiff must make a selection at the outset of his case for either fraudulent inducement damages, or those for physical injury associated with an underlying tort. Hudson does cite *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182 (Tex. 1998) for this proposition. (Doc. 9 at 15–16). *Waite Hill* involved the question of whether the plaintiff was duly awarded a double recovery on an insurance policy's payout in addition to actual damages. 959 S.W.2d at 184. The court held that, although a party is "generally entitled to sue and to seek damages on alternative theories," because the theories on which the jury awards were based were "conclusively for the same loss," the plaintiff could not retrieve double recovery. *Id.* at 184–85.

The relative nascency of the procedural posture of the instant case makes *Waite Hill* distinguishable. In *Waite Hill*, it was decided that double recovery had occurred because the plaintiff "obtain[ed] more than one recovery for the same injury." *Id.* at 184. In the instant case, Villalobos's severed fraudulent inducement and declaratory judgment actions, as well as the original State Court Action, have yet to go to trial, let alone survive removal. It is possible that the jury may provide Villalobos with all his requested damages. Even in *Waite Hill*, however, following the jury trial, the Texas Supreme Court acknowledged that the trial court should have required the plaintiff to elect one of the remedies on which it had been doubly awarded. *Id.* at 185. The undersigned finds no reason to require Villalobos to select any given calculation of a jury award at this time.

On a further note, the answer to the question of whether the claims Villalobos asserts against Aim in the State Court Action and the fraudulent inducement and declaratory judgment actions arise out of the same injury is doubtful. The State Court Action causes of action are premised upon injuries allegedly suffered because of the underlying truck wreck, while Villalobos's fraudulent inducement

and declaratory judgment claims against Aim and Hudson here are for post-truck wreck conduct. As a result, it appears the damages sought are for independent causes of action for distinct factual bases and can therefore receive separate awards. Regardless, the time to elect a singular method of recovery is not presently before the Court.

Accordingly, the undersigned **RECOMMENDS** that the Motion to Remand be **GRANTED** as to Villalobos's fraudulent inducement claim. (Doc. 6).

### 2.    Declaratory Judgment

Regarding declaratory judgment, Hudson seeks to vitiate the declaratory judgment claim against Aim again based on its being meritless. (Doc. 9 at 16–17). Because the undersigned has already concluded that Villalobos has stated a viable cause of action for fraudulent inducement under state law, Hudson's arguments are inapposite. *See Cuevas v. BAC Home Loans Servicing, LP*, No. 4:10-CV-31, 2012 WL 4339063, at *7 (S.D. Tex. Sept. 19, 2012) (rejecting similar argument where the court had found the plaintiffs stated viable causes of action for fraud). Nevertheless, in the interests of thoroughness, the undersigned will evaluate the viability of Villalobos's second cause of action.

Villalobos brings his claim here pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. (Doc. 1-4 at 29); *see also* Tex. Civ. Prac. & Rem. Code § 37.002. In Texas, the Uniform Declaratory Judgment Act ("TDJA"),[11] codified in Chapter 37 of the Texas Civil Practice and Remedies Code, "affords Texas courts the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Boy Scouts of Am. v. Hartford Accident & Indem. Co.*, 443 F Supp. 3d 753, 760 (N.D. Tex. 2020). The TDJA is construed liberally; however,

---

11. Villalobos's claim is brought under the state TDJA. Where improper joinder is asserted, the court must determine whether a reasonable basis exists for predicting liability on the non-diverse defendant. *Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 607 (N.D. Tex. 2009). Therefore, although generally a state court declaratory judgment action which has been removed to federal court would be converted into one brought pursuant to the federal Declaratory Judgment Act, in this case, the undersigned must analyze the viability of the claim under the TDJA. *See Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 709 n.4 (N.D. Tex. 2011).

Texas courts still "limit [its] application to cases in which there is an actual case or controversy between the parties." *Prime Income Asset Mgmt. Co., Inc. v. Waters Edge Living LLC*, No. 3:07-CV-0102-D, 2007 WL 2229050, at *5 (N.D. Tex. Aug. 3, 2007). Thus, declaratory judgment actions "are intended to determine the rights of parties when a controversy has arisen, before any wrong has actually been committed, and are preventative in nature." *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 88 (Tex. App.—Austin 2004, pet. denied).

Texas courts are prohibited from issuing advisory opinions, which exist in the absence of a justiciable controversy. *See Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012) (mem. op.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citation omitted). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having *adverse* legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added). "A party's interest is an adverse legal interest within the meaning of the [TDJA] when it relates to 'a case of actual controversy within [the court's] jurisdiction. This language merely recognizes that the case or controversy requirement of Art. III of the [United States] Constitution applies in the declaratory judgment context.'" *Hellas Constr., Inc. v. Beynon Sports Surfaces, Inc.*, 2019 WL 4254307, at *3 (W.D. Tex. 2019) (quoting *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990)). Although ripeness is one aspect of justiciability, a person seeking a declaratory judgment "need not have incurred actual injury; a declaratory judgment action will lie if the facts show the presence of 'ripening seeds of controversy.'" *Boy Scouts*, 443 F Supp. 3d at 760.

Villalobos seeks to have established his "rights, status, and other legal relationships under the Insurance Policy." (Doc. 1-4 at 29). Specifically, Villalobos requests the Court declare that, due to Aim and Hudson's allegedly false representations,

    i.      [Villalobos] is not bound by the terms of the [Purported Settlement];
    ii.     [Villalobos's] recovery is not constrained to the remaining Settlement Proceeds;
    iii.    [Villalobos's] recovery is not constrained to the Insurance Policy's $5,000,000 policy limit.

(Doc. 1-4 at 30).

The undersigned holds that Villalobos's claims against Aim present a justiciable controversy. Whether a plaintiff is bound by the terms of a purported settlement agreement and the amount of recovery to which the plaintiff is entitled under an insurance policy is a justiciable controversy. Villalobos is seeking to escape any recovery limitations he claims he has under the Purported Settlement since the agreement was only reached by the alleged fraudulent inducement. Having held that the Intervenor Petition sufficiently pleads a claim for fraudulent inducement by Aim, the undersigned is unable to say there is no reasonable basis to prognosticate Villalobos's ability to succeed in acquiring declaratory relief adverse to Aim in Texas state court. *See Prime Income*, 2007 WL 2229050, at *5.

The Purported Settlement's binding or non-binding nature has a detrimental effect on Villalobos's recovery for his alleged injuries. Taking Villalobos's factual assertions as true, if Villalobos's recovery is constrained to the policy limit from the Insurance Policy or is derived only from the proceeds of the Insurance Policy, Villalobos's recovery at most will be some portion of $550,000. This is certainly a substantially lower amount than the $2,300,000 to which Villalobos claims he is entitled and presents a genuine conflict of tangible financial and litigation interests between Villalobos and Aim. (Doc. 1-4 at 13).

The undersigned also finds that Villalobos's declaratory judgment action would be reasonably sufficient under Texas state law. The TDJA expressly delegates declaratory judgment

39

actions to the adjudication of "rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code § 37.002. Villalobos seeks precisely that—the establishment of his "rights, status, and other legal relationships under the Insurance Policy." (Doc. 1-4 at 29). Reduced to its foundation, Villalobos requests this Court find that he is not subject to the fraudulently procured Purported Settlement. The natural result of this relief would be that his rights as a claimant for the underlying truck accident and status as an active claimant-versus-settled party would be adjudicated. Put differently, for Villalobos to re-initiate the full prosecution of his claims against Aim, Hudson, Machado, and others for the truck accident without waste, Villalobos would have to be certain that the Purported Settlement does not shackle him to the mediation room floor. Villalobos's three-pronged claim for declaratory judgment therefore falls squarely within the bounds of the TDJA. *See Innovative Vision Sols., LLC v. Kempner*, No. 01-20-00195-CV, 2022 WL 868130, at *8 (Tex. App.—Houston [1st Dist.] Mar. 24, 2022) (mem. op.) (upholding trial court's resolution of a TDJA claim which sought "a determination of the validity and construction of [a] Rule 11" agreement).

A judicial finding that the Purported Settlement binds Villalobos would severely limit his options and ability to recover in state court; a declaration to the contrary would transport him back before the pre-September 28, 2020, horizon. This is precisely the quandary declaratory judgment actions serve to resolve. *See* Tex. Civ. Prac. & Rem. Code § 37.002. Therefore, the undersigned concludes that Villalobos's declaratory judgment action against Aim presents a reasonable possibility of succeeding in state court.

Hudson advances several tangential arguments to rebuff the declaratory judgment action, none of which are availing. First, Hudson claims that the declaratory judgment action "is hypothetical and contingent on the outcome in the truck wreck case." (Doc. 9 at 16). Hudson supports this assertion by claiming that no binding agreement materialized, and that Hudson is the only entity to which the declaratory judgment action is directed. (*Id.*). As the undersigned has concluded above, the damages Villalobos seeks are not merely hypothetical, though they may be

contingent on the outcome of the underlying case. Moreover, also as concluded in the preceding

discussion, the Purported Settlement and ensuing email exchange on September 28, 2020, did indeed

materialize into a binding contract between Aim and Villalobos. The Intervenor Petition is also rife

with allegations as against Aim and Hudson for fraudulent inducement, to which the declaratory

judgment action is closely related. Hudson presents no acceptable arguments as to why Aim, as a

party to the Purported Settlement and whose counsel's communications and representations lie at the

crux of this dispute, could not receive a declaration adverse to it.

Second, Hudson maintains that the action "simply requests that the court declare that he can

recover damages against Aim in excess" of the limit of the Insurance Policy. (Doc. 9 at 16). This

argument fails on its face. Villalobos is not requesting a declaration that he can recover more than the

$5,000,000 allocated by the Insurance Policy; rather, his sought-after declaration as mentioned above

concerns his methods of recovery available under the Purported Settlement. It may be the eventual

result of a favorable adjudication that Villalobos can recover damages beyond those available

pursuant to the Insurance Policy. However, this does not preclude relief in this case as it pertains to

the Purported Settlement, which allegedly restricts Villalobos's recovery.[12]

Lastly, Hudson asserts that Villalobos requests a declaration as to Aim's liability for

fraudulent misrepresentation, which is affirmative relief prohibited in this sort of cause of action.

(Doc. 9 at 16–17 (citing *Lane v. Baxter Healthcare Corp.*, 905 S.W.2d 39 (Tex. App.—Houston [1st

Dist.] 1995) (mem. op.)). This is nonsense. The Intervenor Petition by its text clearly discusses only

Villalobos's rights and obligations under the Purported Settlement and potential scope of recovery in

consideration of the Insurance Policy. (Doc. 1-4). Villalobos does seek a favorable judgment by his

fraudulent inducement claim that Aim made fraudulent misrepresentations which induced him to

---

12. Considering Hudson's follow-up assertion that the damages Villalobos may receive against Aim in the
underlying truck wreck case "will not be limited to the Hudson policy," Hudson appears to concede that Villalobos's
recovery in the underlying action is not limited to the Insurance Policy. (Doc. 9 at 16).

enter into the Purported Settlement. These contentions, however, are asserted in their substantive entirety in his fraudulent inducement claim. Declaratory judgment claims such as this one may concern a pending cause of action without running afoul of the statutory constraints placed upon such actions. *See Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 228 (Tex. App.—Dallas 2012) (mem. op.). The declaratory judgment claim, on its face or in effect, accordingly does not seek affirmative relief and is properly presented.

Based on the allegations contained in the Intervenor Petition, Aim was properly joined. Because Aim is a non-diverse Texas defendant, this Court cannot sustain diversity jurisdiction over this case. Accordingly, the undersigned **RECOMMENDS** that the Motion to Remand be **GRANTED** as to Villalobos's declaratory judgment claim.[13] (Doc. 6).

### IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Villalobos's Motion to Remand be **GRANTED**. (Doc. 6).

Lastly, the undersigned **RECOMMENDS** this case be remanded to the 143rd Judicial District of Reeves County, Texas.

Finally, the undersigned **RECOMMENDS** that all other pending motions be **DISMISSED AS MOOT**, and that this case be **CLOSED**.

SIGNED this 29th day of September, 2022.

---

13. The parties also note the ramifications of retaining this case in federal court. Villalobos's last line of argument is the claim that this Court's retention of jurisdiction will "set a dangerous precedent" by "signal[ing] to insurance companies that they can adopt Hudson's playbook with impunity." (Doc. 6 at 14). The "playbook" to which Villalobos refers is Hudson's alleged actions regarding the mediation and subsequent email process. (Id. at 14–15). Hudson responds by predicting that, should a third-party claimant be permitted to sue its litigation opponent concerning settlement negotiations for an ongoing state court tort lawsuit, "a floodgate of gamesmanship will open." (Doc. 9 at 17). The issue of policy—whether it be of insurance or that relating to the semi-homophonic jurisprudence—is not one to be decided by this Court in the improper joinder analysis. The undersigned accordingly makes no comment.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).